NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FRANCES TROTMAN,** | **Civil Action No. 09-6163 (JAP)** |
| **Plaintiff,** | |
| v. | |
| **MONMOUTH UNIVERSITY, et al.,** | **MEMORANDUM OPINION** |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Plaintiff Frances Trotman's motion to amend her Complaint in order to assert at least eight (8) additional causes of action against Defendant Monmouth University ("Monmouth") for race, age and sex discrimination and civil conspiracy. [Docket Entry No. 38]. Defendant opposes Plaintiff's motion. The Court has fully reviewed the papers submitted in support of and in opposition to Plaintiff's motion, and considers same without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth below, Plaintiff's motion to amend her Complaint is DENIED.

## I.    Background

Defendant Monmouth University is a private, non-profit, non-sectarian, co-education institution of higher education. Plaintiff Frances Trotman is an African American female who was hired as a full time professor at Monmouth in 1995. Plaintiff assisted in developing a Department of Psychological Counseling at Monmouth to which she held the title of Chair of the Department for two consecutive terms from September 2003 through June 2009.

-1-

In April, 2008, Plaintiff was appointed to a search committee whose task was to find a suitable candidate for the position of the Dean of the School of Education at Monmouth. Plaintiff was the only non-white member of the search committee.  Plaintiff disapproved of the search committee's procedure in that she believed it effectively excluded minorities.  She contacted the Equal Employment Opportunity Committee ("EEOC") regarding the alleged discrimination and was told that she would have to file a charge if she wanted the EEOC to review the search procedure.  She did not do so.  The other members of the search committee were aware of Plaintiff's concerns regarding the search procedure and they also were aware that she had contacted the EEOC.  The committee's members submitted a complaint, in writing, to the Monmouth University Provost and Vice President for Academic Affairs Thomas Pearson ("Pearson") regarding Plaintiff's position and her actions.

On April 23, 2009, in accordance with Monmouth University policy, Pearson met with Plaintiff to discuss the position of Chair of the Department.  In this meeting, Pearson informed Plaintiff that she would not serve as Chair of the Department of Psychological Counseling for a third term.  Plaintiff asserts that several ageist remarks were made during this meeting both by Pearson and by another white-male who was present, Dean Green.  Defendant contends that the decision not to reappoint Plaintiff as the department chair for the 2009 - 2012 term was "based on the fact that the Provost of Monmouth University had lost confidence in Plaintiff's ability to work collaboratively with other departments and within her own department;" a skill which Defendant claims is critical to the position of department chair.  Plaintiff believes that the decision to not reappoint her was based on her age (Plaintiff was sixty-four years old at the time) and she points to the fact that a "significantly younger white male" was appointed chair.  He

served only four and a half months before resigning.  At that time Plaintiff again offered herself as candidate for Chair and was denied.  Plaintiff states that another white male, also allegedly younger than Plaintiff, was appointed.

In April, 2009, Plaintiff filed a complaint with the Monmouth University Director of Affirmative Action; claiming discrimination based on race, sex and age and claiming retaliation. Plaintiff argues that, as a result of the University's investigative procedure, other faculty members became aware that Plaintiff had filed complaints and that this created a hostile work environment for Plaintiff.   The investigation concluded without any finding of discrimination or retaliation.

On or about July 24, 2009, Plaintiff filed charges of age, race and sex discrimination and retaliation with the EEOC.  Defendant denied all allegations.  On November 2, 2009, the EEOC sent to Plaintiff a Dismissal and Notice of Rights.  The Dismissal stated that the evidence presented did not establish a violation of the Title VII or of the ADEA and Plaintiff was informed of her right to sue in Federal or State Court for violations based on Title VII or the ADEA.  The Dismissal specifically stated, "Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice."

On December 7, 2009, Plaintiff filed a Complaint [Docket No. 1] which alleged that the University failed to reappoint her as Chair of the Department as a result of her objections to the search procedure and that her non-reappointment constituted retaliation and thus a violation Plaintiff's Federal and State rights.  Plaintiff now seeks to amend that Complaint through this motion.

Plaintiff argues that the events which occurred between December 2009 and the time she

filed the present motion are relevant to her position in this motion.  In the Fall of 2010, Plaintiff was subject to an internal audit conducted by Monmouth.  Plaintiff asserts that she is the "first and only professor to be investigated and audited by the new Director of Internal Audits." Defendant does not deny this allegation.  On April 8, 2011, Defendant commenced internal University detenure proceedings against Plaintiff based on alleged evidence revealed during the internal audit.  Pursuant to the collective bargaining agreement between Monmouth and the Faculty Association of Monmouth University ("FAMCO"), an arbitration hearing is required.  As of the date of filing of Defendant's Brief in Opposition of Plaintiff's Motion, the hearing had not yet been scheduled and no decision or findings with regard to the allegations against Plaintiff have been made.

During the internal audit and the initiation of detenure proceedings against Plaintiff, Plaintiff and her former counsel moved forward in this litigation without seeking to amend the Complaint at any time.  A joint discovery plan was agreed upon in March 2010.  A conference held on April 26, 2010 resulted in a Pretrial Scheduling Order which held that "[a]ny motion to amend the pleadings must be filed no later than 7/23/10 and made returnable on 8/16/10." Significant discovery was exchanged between the parties and depositions were taken.  The president of Defendant Monmouth was deposed and Plaintiff herself was subject to two days of deposition.  Though the cut off date for discovery was scheduled for June 30, 2010, the parties agreed to put discovery on hold to attempt to mediate all pending matters, including the detenure proceedings.  On June 21, 2011, the parties participated in private mediation - which was unsuccessful.  Following mediation, Plaintiff's counsel advised the Court that Plaintiff intended on seeking new counsel and requested a status conference so that the parties could discuss the

possibility of new counsel entering the case and an extension of the discovery deadlines.  Before the status conference could be convened, however, new counsel for Plaintiff entered an appearance and this motion was filed.

Plaintiff argues that her amended Complaint provides supplemental facts and allegations which factually demonstrate that she was subjected to racial, age and sex discrimination. Further, Plaintiff argues that her amended Complaint provides supplemental facts and allegations which factually demonstrate that she was subjected to retaliation, harassment and a hostile work environment as well as a "continuous, clear and repeated pattern and practice of discrimination against Plaintiff based on her race, age and sex."

Plaintiff contends that allowing her to more fully plead the factual allegations related to all her claims will more efficiently resolve matters which she asserts cover parts of the same period of time and which involve overlapping issues of law and fact.  In addition, Plaintiff's new counsel claims that there were deficiencies in Plaintiff's former counsel's representation of which Plaintiff was not fully aware; including circumstances surrounding mediation.  Current counsel for Plaintiff wishes to correct these deficiencies.  Thus, Plaintiff believes she has satisfied the "good cause" requirement under Rule 16.

Plaintiff asserts that the passage of time alone does not require that a motion to amend a complaint be denied on the grounds of delay.  Rather, Plaintiff notes that the question of undue delay focuses on the actions of Plaintiff and the reasons why Plaintiff did not amend earlier. *Cureton v. NCAA*, 252 F.3d 273 (3d Cir. 1984).  Plaintiff explains that the proposed Amended Complaint would cure the deficiencies of the Complaint filed by Plaintiff's former counsel by providing greater detail as to the relationships and interactions of the parties as well as describing

in greater detail the manner in which Plaintiff was, and continues to be, discriminated and

retaliated against.  Plaintiff again eludes to the fact that Plaintiff was not wholly aware of the

actions taken by her former counsel and, indeed, deposition testimony reveals that Plaintiff was

only vaguely remembers seeing the initial Complaint.

Plaintiff argues that Defendant had "timely notice" of her claims of discrimination due to

the fact that Plaintiff included these charges in the claim she filed with the EEOC and because

Defendant questioned Plaintiff during deposition regarding her treatment at Monmouth as an

African-American female.  Plaintiff alleges that any new factual allegations related to events

which occurred during the pendency of this case were already linked to this case through the

mediation.

Plaintiff further argues that Defendant will not be prejudiced by permitting the

amendment.  Defendant's position regarding discovery is that it "was almost complete."  Plaintiff

does not agree.  Plaintiff asserts that there was an agreement between Plaintiff's former counsel

and Defendant to suspend discovery pending the outcome of mediation.  Further, Plaintiff notes

that in his final letter to the Court, former counsel for Plaintiff indicated that he intended to

depose at least three additional persons and that Defendant indicated a desire to schedule a two

day IME of Plaintiff.  The Court entered an Order deferring the issue of discovery extension.

With respect to the proposed causes of action which arose after the filing of the initial

Complaint, Plaintiff asserts that she has filed without delay; thus she asserts that she has not

exhibited undue delay or bad faith.  Plaintiff notes that she filed the current motion less than

three months after she was advised of the internal detenuring complaint.

Plaintiff also contends that her proposed amendments to the Complaint are not futile.

Plaintiff states that Defendant has failed to satisfy its "heavy burden" of establishing futility as set forth in *Air Products & Chemicals, Inc. V. Easton Metal Products Co.*, 256 F. Supp. 2d 329, 334 (E.D. Pa 2003). Plaintiff reiterates that she filed this motion in a timely manner and she argues that each of her claims of race and sex discrimination under Title VII and the ADEA should relate back to the filing of her original Complaint under Fed. R. Civ. P. 15(c). Plaintiff distinguishes her case from the factual circumstances present in the cases cited by Defendant and states that she has exhausted her administrative remedies. Thus, she asserts that she should be permitted to amend her Complaint with respect to her non-reappointment to include her discrimination claims. Plaintiff also argues that her allegations regarding the events which occurred after her charge was filed are properly considered within the scope of her original charge. She cites *Cf. Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394,398-99 (3d Cir. 1976).

In response to Defendant's argument that Plaintiff's claims of discrimination and retaliation with respect to the detenuring proceedings are not ripe, Plaintiff maintains that she properly brought these claims at this time. She asserts that "the selectively targeted investigation and the resulting detenure charge are the product of a continuing course of conduct by Defendant." With respect to Defendant's allegation that there has been no final or lasting adverse employment action sufficient to establish a violation under State or Federal law, Plaintiff asserts that Defendant's arguments regarding the futility of her amendments go beyond the face of Plaintiff's proposed pleading. Plaintiff chooses to address these cases in her motion papers with the caveat that she is going "beyond the face of her Amended Complaint solely to show why this Court should not accept [D]efendant's argument." Plaintiff distinguishes the circumstances surrounding her case from those specific facts present in cases cited by Defendant. Plaintiff

-7-

argues that these differences are issues of fact which should not be resolved at this stage of the proceeding. Although Plaintiff does not specify in her motion papers, the Court infers that Plaintiff's position is that there has been an adverse employment action sufficient to establish that she has a valid claim under State and Federal law.

Defendant opposes Plaintiff's motion. Defendant notes that Plaintiff seeks to amend the Complaint in two respects; by adding additional causes of action predicated on Monmouth's decision not to reappoint her as Chair of the Department and by asserting new factual allegations and causes of action regarding events which have occurred since her non-reappointment; specifically, the detenure proceedings. Defendant first argues that Plaintiff has not shown good cause under Rule 16(B)(4) for leave to amend her Complaint and to add additional facts. Defendant's primary argument in this respect is that Plaintiff has not demonstrated that she could not meet the scheduling deadline for amendment of pleadings despite her due diligence. Indeed, Defendant points out that at no time does Plaintiff provide an explanation as to why she did not seek to amend her Complaint prior to the deadline set in the Scheduling Order. Defendant also notes that Plaintiff's initial charge with the EEOC, which she filed in July 2009, addresses claims of sex, race and age discrimination. Thus, Defendant argues, Plaintiff knew that she could have brought these additional causes of action in her initial Complaint, but that she chose not to do so. Defendant does not think that new counsel with a new litigation strategy should warrant amendment of the Complaint at this late stage in the game. In Defendant's opinion, any new causes of action related to Plaintiff's non-reappointment as Chair should be barred.

Likewise, Defendant argues that Plaintiff should not be permitted to introduce any new causes of action or factual allegation related to the detenure proceedings. Defendant states that

Plaintiff first became aware of the detenure proceedings on April 8, 2011.  Thus, Defendant argues that any proposed amendment to the Complaint should have been sought at that time. Rather, Plaintiff waited several months before seeking leave to amend the Complaint.  In the meantime, she proceeded with depositions throughout the month of May and participated in mediation in late June.

Defendant also takes the position that Plaintiff has not met the standard which would permit amendment of the Complaint under Rule 15.  Defendant asserts that Plaintiff has demonstrated undue delay and bad faith; evidenced in part by her "lengthy and inadequately explained delay in seeking leave to amend."  Further, Defendant argues that it will be unduly prejudiced as a consequence of Plaintiff's amendment of the Complaint and the addition of new causes of action and factual allegations.  The parties have already engaged in significant discovery and Defendant notes that over 3,000 pages of documents have been exchanged  to date and that several depositions have been taken.  Defendant asserts that it has already incurred significant costs associated with this litigation and that it has based its litigation strategy exclusively around Plaintiff's claims of retaliation.  Defendant believes that allowing amendment of the Complaint would require witnesses to be re-interviewed and would necessitate additional discovery by both parties.  Defendant claims it was preparing to file a motion for summary judgment and that allowing an Amended Complaint would prejudice them in this respect as well.

Further, Defendant argues that Plaintiff's motion should be denied because the amendment would be futile.  Defendant takes the position that claims relating to Plaintiff's non-reappointment as Chair of the Department are time-barred because they were not filed within the 90 day window set forth in the EEOC's Notice of Dismissal or because they are beyond the

applicable two year statute of limitations.  Defendant also contends that Plaintiff's claims which

pertain to the detenure proceedings are not ripe.  Defendant argues that Plaintiff has failed to

exhaust administrative remedies or to file a charge with the EEOC, a condition which Defendant

alleges is precedent to filing a Title VII or ADEA claim.  Accordingly, Defendant concludes that

Plaintiff may not file a viable claim under either of these statutes based on the detenure

proceedings.  Further, Defendant contends that "Plaintiff cannot assert a plausible claim of

discrimination or retaliation in violation of any state or federal law  predicated on the detenure

process insofar as she has not yet been adversely affected."  Defendant argues that, in order to

establish a prima facie case of discrimination or retaliation, Plaintiff must first demonstrate that

she has suffered an adverse employment action.  Defendant interprets case law as supporting the

proposition that, within an academic setting, only an *official* and *final* decision on Plaintiff's

tenure could qualify as an adverse employment action.  In support of this position, Defendant

relies on the holdings in *Okruhlik v. University of Arkansas*, 395 F.3d (8th Cir. 2005) and *Langley

v. Merck & Co.,* 186 Fed. Appx. 258 (3d Cir. 2006).

## II.    Analysis

Plaintiff seeks to amend her Complaint in order to add additional facts and causes of

action against Defendant as they relate to two separate events and time periods.  First, she wishes

to include additional causes of action for discrimination as they relate to her non-reappointment

in April 2009, the event at issue in her original Complaint.  Plaintiff then seeks to add factual

allegations and causes of action relating to events which have occurred throughout the pendency

of these proceedings and which she alleges culminated in the detenure proceedings initiated

against her in April 2011.  The Court shall address Plaintiff's motion as it pertains to claims arising under each separate time period.

Because Plaintiff's motion was filed after the July 23, 2010 deadline for filing motions to amend the pleadings, Plaintiff must meet the "good cause" standard set forth in Rule 16(b) for modifying a scheduling order before she will be permitted to amend her Complaint.  The Court has broad "discretion in determining what kind of showing the moving part must make in order to satisfy Rule 16(b)'s good cause requirement.  *Phillips v. Greben,* Civil No. 04-5590 (GEB), 2006 WL 3069475, *6 (D.N.J. Oct. 27, 2006).  Whether good cause exists depends on the diligence of the moving party.  (*see* FED.R.CIV.P. 16(b) advisory committee's note; *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990)).  The movant may establish good cause by demonstrating that their delay in filing the motion to amend stemmed from "any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order" *(Newton v. Dana Corp. Parish Division*, 1995 WL 368172, at *1 (E.D.P.A. 1995) (quoting *Gestener Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).  Further, in making this determination, the Court "must consider FED.R.CIV.P. 16(b)'s requirement that scheduling orders only be modified for 'good cause' in conjunction with Rule 15(a)'s directive that leave to amend a complaint be 'freely given.'" *Reynolds v. Borough of Avalon*, 799 F.Supp. 442, 450 (D.N.J. 1992).

The Court first examines Plaintiff's motion to amend as it relates to causes of action arising out of Plaintiff's non-reappointment.  As Defendant points out, Plaintiff consistently failed to explain why she did not seek leave to amend her Complaint prior to the July 23, 2010 deadline.  Counsel for Plaintiff indicates that there were deficiencies in her prior counsel's

filings.  However, this alone is not a sufficient basis upon which to adjust an expired scheduling deadline.  Plaintiff's charge with the EEOC cited discrimination on the basis of sex, race and age in addition to retaliation.  Therefore, the Court finds that Plaintiff was aware that she was able to bring these claims in her Complaint against Defendant.  Through her attorney, Plaintiff made the decision to only cite claims for retaliation in her initial Complaint.  Plaintiff's ignorance of the substance of her Complaint is not grounds for amendment.  The litigation proceeded for over a year without any attempt to amend the Complaint and without any discussion regarding claims other than retaliation related to Plaintiff's non-reappointment.  Plaintiff had ample time to review the pleadings and, indeed, had a responsibility to do so.  For these reasons, to the extent Plaintiff seeks to move to amend her Complaint to assert additional causes of action pertaining to her non-reappointment, the Court finds that Plaintiff has failed to establish good cause under Rule 16(b) to extend the already expired deadline for moving to amend the pleading.  Plaintiff's motion is, therefore, denied in this regard.

Turning to Plaintiff's motion to amend the Complaint as it relates to causes of action and factual allegations arising out of events which have occurred since the filing of the initial Complaint and arising out of the detenure proceedings, the Court again notes, that  whether good cause exists depends on the diligence of the moving party. (*see* FED.R.CIV.P. 16(b) advisory committee's note; *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990).  Plaintiff received notice of the detenure proceedings in April 2011.  She immediately addressed the charges against her.  In addition, throughout May and June Plaintiff proceeded with this litigation, prepared for depositions, attended mediation related to the detenure proceedings and obtained new counsel.  This motion was filed on June 30, 2011.  The

fact that Plaintiff was engaged in settlement discussion involving detenuring matter, as well as moving forward as scheduled with this litigation, when viewed in conjunction with the notion that leave to amend should be "freely given" leads the Court to find that Plaintiff was sufficiently diligent in filing the present motion to amend and, thus, has met the "good cause" standard set forth in Rule 16(b) for modifying a scheduling order as it applies to the causes of action arising out of the detenuring proceedings.   As a result, the Court shall consider Plaintiff's motion as it relates to amendments concerning the detenuring proceedings as if they have been timely filed and the Court considers same under Rule 15.

Pursuant to FED.R.CIV.P. 15(a)(2), leave to amend the pleadings is generally given freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*.  However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted.  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

The Court will first address the issue of undue prejudice.  Defendant argues that granting Plaintiff's motion would "severely prejudice Defendant" by introducing several new causes of action nearly 17 months after the case was filed.  Plaintiff argues that Defendant would not be prejudiced due to the fact that discovery was not complete at the time Plaintiff filed this motion. In addition, Plaintiff asserts that Defendant has not met the heavy burden of showing undue prejudice.  Plaintiff notes that the adverse party "is required to demonstrate that its ability to

-13-

present its case would be seriously impaired were the amendment allowed." *Air Products & Chemicals, Inc. V. Easton Metal Products Co.,* 256 F. Supp. 2d 329, 334 (E.D. Pa 2003).

Plaintiff's original Complaint dealt solely with causes of action for retaliation predicated on specific events and a specific action taken by Defendant: their failure to reappoint Plaintiff as Chair of the Department.  This litigation proceeded for approximately 16 months based on that issue alone.  Both parties engaged in significant discovery, incurred considerable costs, attended mediation and took depositions regarding the sole issue of retaliation.  The addition of the proposed new causes of action as they relate to events which have occurred since Plaintiff's non-reappointment would significantly expand the scope of discovery and, indeed, significantly change the flavor of the entire litigation.  This is especially true because the proposed causes of action would be supported by entirely new fact patterns; and thus could not have been contemplated in the original Complaint.

The introduction of such a significant amount of information and of entirely new legal theories would undoubtedly necessitate additional discovery, additional costs, further motion practice and, most likely, a new litigation strategy for Defendants.  Plaintiff's argument that discovery was not complete at the time she filed this motion is obsolete in light of the fact that discovery would essentially begin anew if she were allowed to amend as pleaded.  Indeed, the entire case would begin anew.  Permitting such an amendment would significantly delay these proceedings, would not promote judicial economy and would in fact thwart the Court's efforts to "secure the just, speedy and inexpensive determination" of this action.  FED.R.CIV.P. 1.

Neither party has argued that Plaintiff is barred all together from bringing these claims against Defendant.  She may do so properly and in a timely fashion in a separate action.

-14-

Therefore, the Court finds that granting leave to amend her Complaint to introduce new causes of action as they relate to events which have occurred since Plaintiff's non-reappointment would significantly prejudice Defendant and Plaintiff's motion is denied in that respect.

## III.      Conclusion

For the reasons stated above, Plaintiff's motion to amend is DENIED.  An appropriate Order follows.


Dated: September 20, 2011

　　　　　　　　　　　　　　　　　　 s/Tonianne J. Bongiovanni
                                    **HONORABLE TONIANNE J. BONGIOVANNI**
                                    **UNITED STATES MAGISTRATE JUDGE**